Call our third case, Espinosa-Cortez v. Attorney General. Good morning, Your Honors. My name is Peter Rogers. I am counsel for the petitioners in this case. I would respectfully request three minutes for rebuttal. That's granted. Thank you, Your Honor. Your Honor, the petitioners in this case respectfully submit that no reasonable fact finder could conclude that my clients have not established a well-founded fear of persecution on account of a political opinion that they have or has either been ascribed to them or imputed to them by the FARC, which is the organization in Colombia. But to some extent, what you've got to do here is you've got to sort of put yourself in the position of FARC. It seems that FARC is motivated by achieving of a tactical goal, which is to get inside access to certain folks who have access to government operations. That doesn't seem to be – FARC doesn't seem to be doing anything based on the political opinion of these three individuals. Well, I think what the court has to look at is whether – and I believe one of the errors of the BIA in this case was that the BIA sought – wanted my client to demonstrate that he had some sort of political motivation for his business relationships with the Army, which led to his connections and being actually in the cadet headquarters where he was providing services. Am I incorrect? In other words, at least Mr. Espinosa-Cortez had to have a political opinion, and FARC was responding to his political opinion. And remember, FARC is not the government. That's correct. It's almost like then you have to show another step, which is that the government is either unwilling or unable to protect Mr. Espinosa-Cortez with regard to his political opinion that he is being persecuted for by FARC. Well, Your Honor, I would submit that the State Department report makes clear that the government is unable or unwilling to control the FARC and protect individuals. Although the latest State Department report shows that FARC appears to be down to about 9,500 members. I agree that they're actual numbers, but there's no indication that the activities of those that continue – 9,500 remains still a very considerable force. And I might add that that same report, Your Honor, which was published only three weeks ago, for example, states that the FARC actually publicly substantiated the killing of eight indigenous people who were perceived to have cooperated with the government. And that's what we have here. The issue is whether they have ascribed to my client a political opinion which is opposed to them. And in finding that – the BIA in finding that they did not do that, the BIA ignored highly relevant testimony. Did the IJ find that he would suffer persecution if he were to return to Colombia? The IJ's focus – the IJ's focus was really on whether he had – whether he had demonstrated past persecution. No, the IJ did not – But you're abandoning that now, aren't you? Our view is does he have a well-founded fear of future persecution – Based on one of five recognized categories. And imputed political opinion. That's correct. How do you get to imputed political opinion? The imputed political opinion comes from – this court has held, for example, in the Gomez case, this court has found that even social relationships with organizations or individuals who work for organizations that are opposed to FARC are considered by FARC to be an anti-FARC opinion. Well, but that can be – that's a social – that was a different case. There it was on account of being a certain social group. Here you hung your hat on political opinion. So it's not really – it's not the same argument. Well, it's – I understand the court's point. That case was decided on the social group issue, but the court did not reach the political opinion issue because the incidents that happened to the individuals in Gomez that related to their dating, the officers to which they ascribe the opinion, did not rise to the level of a form of persecution. So they said, no, it's a social group claim. But they – this court clearly found that the FARC does ascribe to those people an anti-FARC opinion based upon those relationships. But with all the activity here or the communication between FARC and the petitioner being related to we want you to work for us and you need to work for us and he's refusing, and then the, you know, failed threats are being made, why is it not reasonable or at least permissible for the IJ to draw the conclusion that any persecution would be because he didn't cooperate? Why is that not supported by substantial evidence, which is our standard here? Well, I think because they ignored two key components of his testimony. The first is the fact that in his last communication with the FARC, which was in February of 2003, in his last communication with the FARC, the FARC said to him, stop providing for the government, which we believe clearly communicates – or excuse me, stop providing for the Army, which we believe clearly communicates their belief that his support of the Army represents an anti-FARC opinion. And we believe, again, that's consistent with FARC's modus operandi, as this court found in the Gomez case. Again, this court found that social relationships are perceived to be anti-FARC. Is your argument that his business relationships and dealings with the government, having a business in one of the government's military academies, is sufficient to impute political opinion? The argument is that the FARC views social relationships, business relationships, anything that is in support of entities that are anti-FARC to be an anti-FARC political opinion. That's exactly what they do. They ascribe that view to them. But what's important, Your Honor, is in the – You have a case that says that we can impute political opinion or political views solely on the basis of being employed by a government who is against insurgents. Actually, I have a better example, Your Honor. The Ciavaria case. Your Ciavaria case is a case where this court held that you can have zero political opinion. You can have never been politically active in your life, no political connections whatsoever. And in that Ciavaria case, this court found that Mr. Ciavaria had clearly – actually, the word was unequivocally demonstrated that he was being persecuted on account of an imputed political opinion. The facts in that case were – Imputed political opinion solely because he was – Solely because he came to the assistance of people who were complete strangers to him who turned out to be political activists. He had no connection to that organization. But this court found that because of that singular activity, that the paramilitary groups in Guatemala had ascribed to him a political opinion that was against the government. Well, but the BIA mischaracterized the testimony there. We don't have that situation here. How did the BIA draw the wrong conclusions based on the testimony? I would refer you to pages 137 and 138 of the administrative record, which, again, where the BIA specifically ignored the testimony that says, stop providing for the Army and to work with them. Well, but doesn't that mean stop doing something for them and come work for us? We want you to work for us. And if he goes back, he's being persecuted, not because he sided with the Army politically, but because he refused to work with them. Well, again, Your Honor, when you look at – is that he would be persecuted on account of an imputed political opinion, at least in part. And in addition, a persecutor can have multiple motives, and still the individual can demonstrate that he qualifies for asylum as long as he can show, at least in part, he is going to be persecuted on the basis of one of the qualifying grounds. And I think what's – the testimony that – you asked me a question about the testimony. The testimony is that he stopped providing for – after that, he says, they just stated that no moment would I accept because they go against my principles. My view of the statement is it's an unequivocal statement that I would never accept their proposition to work with them because it goes against my principles. What clear expression of an anti-FARC political opinion could there be? And interestingly, after this exchange in February – Is that – he's saying he told them that or he's explaining to the IJIC? Well, no – Again, I mean – and remember, it's got to be how does FARC perceive it. The Chavarria case from Guatemala, it was – there was evidence that it was perceived by the persecutors that Chavarria was aligning himself with political activists. That doesn't seem to be the case here. Well, Your Honor, but my client's entire history is in alignment with organizations that are anti-FARC. He supported – he was kidnapped by FARC in 1984 and began a career of opposition to FARC by joining the Liberal Party. The record demonstrates that. His relationship – But he wasn't persecuted until 2000 – early 2000s? Well, the activities that we are – And you're – I mean – That's correct. These threats to him and his child. That's correct. But what we are – our argument is that through these statements, which the BIA wholly ignored, he's communicated a clear anti-FARC view. And what happened after he communicated that view is they approached. That's when they escalated their – There's no question about persecution, is there? I thought the IJ found him credible with regard to his testimony about persecution. That's correct. The problem was whether it fit within one of the recognized categories. That's correct. And our view is if this court can find that an admittedly apolitical individual who has no connections with the con of eagle women who were the activists against the paramilitary group and can find nothing else was stated in that decision upon which the – upon which the persecutors could rely. They didn't cite a single thing other than his singular act to come to the assistance of these women after they were attacked. There was nothing they could draw upon to say this man has a political opinion against the paramilitaries. There was nothing. Did you mention Codron Garcia, a case out of the Ninth Circuit, in your brief? I might have. I don't recall specifically. It's a case that did find, it seems to support your view, imputed affiliation or political opinion on the basis of affiliation with the government. And there's no question. And, again, if you – if you say that just because he was allied with the Colombian government that you can't impute a political opinion. Well, again, the question is what is the persecutor ascribing to him? And when I've got a – I have an individual who has a lifetime of working with organizations that are – Well, FARC would have no interest in him whatsoever if it weren't for his helping the Colombian government. But I'm not necessarily sure the relevant point is that FARC would have no interest in him because of that. The question is would they choose to persecute him because he has refused to cooperate with them, he has aligned himself with organizations that are vehemently anti-FARC, and we respectfully submit that the combination of these things clearly shows that he has a – that they've imputed to him a political opinion which is completely consistent with this court's finding in Gomez and with the State Department country report. Thank you, Your Honor. Thank you. Thank you. Good morning. May it please the Court. My name is Dallin Jolio, a trial attorney with the U.S. Department of Justice, and I represent the respondent, Attorney General. There is no evidence in this case that FARC perceived any of Petitioner's actions or inactions as a political opinion. That's the problem in this case. Petitioners went to great lengths to try to argue that possibly FARC could have attributed these political opinions to him because of all these associations, because of his catering business. But the problem is that— Because they wouldn't have any interest in him if he weren't aligned with the Colombian government and if he didn't have social contacts with military personnel. That's correct, Your Honor. In fact, that would be a problem on remand with this case is because the individuals in this case, after they realized that they need to leave Colombia, they took months. The petition – main petition in this case took four months before he actually left Colombia, and nothing happened after that. And there's been no indication that there's been any threats that have occurred against these individuals after they dissolved themselves of their interest in Colombia. Could you impute political opinions solely based on his affiliation with the Colombian government? If that was a problem, if we did lose this case based on the fact that this panel found that there was imputed political opinion and this court chose to remand this case, which would have to so that the board can make the first determination regarding well-founded fear. Because the board never came to a conclusion in this case regarding well-founded fear. The analysis in this case ended once the board found that there was no political opinion and there was no imputed political opinion. Didn't the IJ come to a conclusion there was a well-founded fear? The IJ – yeah, the IJ also didn't reach that point because the IJ found that there was no past persecution, there was no basis for – there's no protected characteristic under the statute. That's the first requirement. They must meet the terms of the statute. Wouldn't Gomez Zuluaga support him as a member of a social group? I think Petitioner's reading of Gomez Zuluaga is far too broad. Gomez Zuluaga concerned romantic relationships, romantic relationships with soldiers, Colombian government officials, Colombian policemen. That is very different from having a general membership in an equestrian club where other police members might be there. It's different in degree. And also this court, as the board, looks at the entire record. And if we look at the whole record in this case, the case in Gomez Zuluaga, her experiences were far different. She had been abducted on several occasions. She had past persecution. The problem was whether or not it fit underneath the protected characteristic. This case, the link is just missing. There's no evidence there. The facts are very compelling and they are facts that the IJ found to be credible which involved numerous phone calls, threatened phone calls to him as well as to his daughter, not telephone calls to his daughter but approaching his daughter on the street, letting her know that they were not kidding and that they were to be taken serious. And then, of course, is the fact that he sold his entire business and left Colombia, came to the United States because that's the only country he had a visa for, and he's an elderly person. It would seem to lay credence to his version that he was persecuted and intimidated by his heart. And as a result of that, he had to leave. There's two issues. It seems to me the only question is was it on a recognized ground. That's exactly it. The first issue is whether or not the threats actually were clearly imposing violence. There were no death threats. I think there's a great license taken with the record here because the threats were very vague. But the second point is violence happens all over the world. Some violence is atrocious. But at the same time, it's not always because of protected characteristic. The statute only protects asylum for individuals for certain grounds. Even if they were harassed, even if they were persecuted beyond the statute, the persecution would have to have occurred because of imputed political opinion. If FARC wanted their property, if FARC wanted their access, if FARC wanted their knowledge, all those things could have been true. But none of those things prove to this court and compel this court that the persecution was on account of political opinion. But what if he reasonably fears persecution solely because of his membership in the— or not membership, but participation with the Colombian government and his being a supplier for the Colombian military? He has to prove that FARC saw that as a political opinion. Colombia is a large country. FARC is not going to actually say to him, this is why we're making these phone calls. It's not a situation where they're going to give him an affidavit and say, this is exactly why we're doing this. It seems very clear that the reason they're doing this is to have him become an informant. Recruitment, which is exactly what Elias Zacharias, what the Supreme Court examined in Elias Zacharias. I think this court made it very clear in Singh v. Gonzalez, which basically laid out the mixed motive, accepted mixed motive for the Third Circuit. But it said the persecutor has to have attributed the political view and acted on the attribution. And as I quote the court, the focus is instead on whether this attribution has in fact occurred. Now, that is the burden for petitioners to prove. They have to prove that FARC attributed to them a political view in fact. They have to establish that. That is their burden. That is how they qualify for asylum. That is what was missing in this case. And when this court reviews this record and looks at what the IJ did and looks at what the board did, it has to conclude that the record compels that conclusion. The general threats, the fact that he was associated, all of these things could, but they don't. They don't compel the conclusion underneath the Supreme Court standard of compelling evidence. I also wanted to point out petitioners draw a lot of support from Chavarria, which that case is actually very unique. But the problem, what that court laid out was that there was nothing in the record, the court could divine no other reason for Chavarria to be threatened after the robbery when he returned to Guatemala other than an imputed political opinion. The problem here, we have more evidence in the record. The record in this case shows many other reasons, recruitment, knowledge, access. All of those things bear out and take this case away from Chavarria. Also, this court recently examined Chavarria in Wren versus the Attorney General, which Judge Rendell was on the panel, and explained, and I quote, there was no indication that the petitioner in Chavarria was surveilled and attacked for any reason other than the assistance he rendered to people who turned out to be political dissidents. This case is clearly distinguished. I also wanted to point out one other thing. to go ahead and extend Ximena's period of voluntary departure. I think it's clear this court doesn't have authority to do so underneath Reynoso versus Lopez out of this court in 2004. There's no authority to extend voluntary departure. That's for the agency to do. Do you disagree that Espinoza-Cortez at all times rejected the advances of the FARC and explicitly told them that he disagreed with their principles? He did not. That's the problem in this case. He didn't make that expression of the fact that the reason he wasn't joining in their cause or the reason he refused to participate was because he disliked them or because he rejected them. Wait a minute. This is at page 138 of the appendix, and I'm quoting his testimony. It says that they wanted me to be an informant and that we stop providing for the Army and work with them, and they needed, that they wanted part of the money that I had that I made. They just stated that no moment would I accept because they go against my principles. That seems to be a bad translation to me. It would suggest to me that he is saying, I just stated that no moment I would accept because they go against my principles. Isn't he explicitly rejecting the FARC and stating that he is not going to go along with them because they cut against his principles? Well, there's three issues with that. It could possibly be a bad translation. The second one is petitioners have weighed their due process argument regarding the translations in the record, so we may not know exactly what that said. But the third point is the petitioner also made it clear that the threat, and I quote him from the Administrative Record at page 156, they never made, or never a direct threat to us, so we don't know if he actually had an exchange with the FARC members where he made those kind of comments. Those kind of comments may be important, but we just don't have compelling evidence from the record that that is what he said, that he told them, my political opinion is this, and therefore that's why I will not participate with you. He just refused to be recruited and to cooperate, much like Elias Zacharias, and he could have done it for many reasons. Maybe he held a political opinion, but maybe he also just didn't want to jeopardize his cafeteria business and his associations with the government. It could have been various reasons. What would happen if he perceived that there was a threat against his daughter and he perceived that the threats were escalating? And so what has to happen for there to be persecution? They have to actually shoot someone, kidnap someone? Well, the problem in this case is it begins before that. He has to prove that it was politically motivated or motivated by an imputed political opinion. So if it wasn't politically motivated and they shoot him because or kidnap his daughter, there's nothing he can do? It would be crime. And like I said before, there are horrible things that happen all over the world in the nature of crime and for reasons that aren't protected under the statute, and I'm sorry for those things. But at the same time, yes, things could have happened, things could have escalated, and it could have gotten very ugly, but that doesn't mean it was because of a protected characteristic under the statute. Don't the facts, which don't seem disputed, that he dissolved all his business holdings and liquidated all of his real estate and left suddenly Colombia for the United States, lend credence to the idea that he was in genuine fear of persecution by the FARC? I'm not certain of that, Your Honor, because he did stay four months. I think if I was in genuine fear of my life and of my child, I wouldn't worry so much about my holdings and those things. I probably would get on a plane sooner, especially if I had a visa. Well, his testimony was that he sold as fast as he could quickly at significant loss. Well, and that is true, but I just can't imagine that four months, that's my own personal view, but I think at least from the Board's perspective, they haven't had a chance to analyze that question of well-founded fear because this case stopped at imputed political opinion, and it stopped even before mixed motive analysis. We get first to was there an imputed political opinion, and it ends there because they just did not demonstrate that. As I see the panel has no further questions, I'd like to conclude with your permission. Espinoza presented no evidence that he was singled out for recruitment or extortion because of his political opinion or an imputed political opinion. Rather, the evidence reasonably suggests that FARC members were motivated by Espinoza's money, his access to government facilities, and their own greed. Therefore, Espinoza has failed to show compelling record evidence he was recruited or extorted or threatened on account of his political views. This petition for review should be denied. Thank you. Thank you. Thank you, Your Honors. May it please the Court. I agree completely with Judge Fuentes' characterization of my client's testimony. It's, in our view, clearly a statement that his refusal, the reason he will not cooperate with him, is because it would go against his principles. It's right there in the record. And I think what's critically important is it was after that last exchange with the FARC is when the FARC escalated their activities against my client. And they went up to his daughter and they said, you better tell your dad that we're not playing. I'm a parent, and if that happens to my daughter, after I've had this kind of communication for FARC over the period of times, I don't know what's a more menacing or imminent threat when someone walks up to your daughter and says, you better tell your dad this, because that implicitly says, we could have killed your daughter today, we could have kidnapped your daughter today, we could have done anything we wanted with your daughter today, you better do what we've asked you to do. As a practical matter, having sold his business, if he were to go back now and his family, there would be really no reason, even under that analysis, to have anyone go after him, is there? Respectfully disagree, Judge Ambrose. I think that actually the FARC's M.O. is that if you defy FARC, that they will hunt you down and they will kill you. And that's what the State Department report says. There's a litany of things that they do to people because of perceived transgressions. That's the critical, the perceived transgressions. In fact, this court held in the Arias case, this court found that the act of refusal to pay a war tax and even the inability to pay a war tax is an act of political opposition. But here it was noted that he stayed four months, nothing happened, and that's while he had his businesses or he was in the process of having those businesses and unloading them. At this point, what uses is he to FARC at all? Well, whether he is of use, I would respectfully suggest, is not the relevant issue. It's whether that because of – That's probably right. I would respectfully submit that it's because of his activities, his lifelong anti-FARC activities, and because of his relationships that he had, and because of his refusal to cooperate. I might add that in the Gomez case, this court specifically found that Gomez's uncle was shot by the FARC. Why? Because of a refusal to cooperate. Now, the government says this is like Elias Zacharias. We respectfully disagree. In Elias Zacharias, the Supreme Court found that forced conscription or attempted forced conscription may not necessarily be an act of persecution, but the facts were entirely different in that case because Elias Zacharias – But the argument would be the same, that I'm opposed to being a part of this type of military operation. But they found against him because there was nothing else that they could point to that would suggest that he had done it on account of a political opinion, and that's the reason they held against Elias Zacharias. The same argument was made in this court in Luquego, and they said, no, there's much more here with this gentleman's background than in Elias Zacharias. So they rejected the Elias Zacharias argument. Elias Zacharias had no connection with the Guatemalan government. Pardon me? Elias Zacharias had no connection with the Guatemalan government. That's correct. Whereas here, at least you have the – A lifetime. Yeah. A lifetime. And we respectfully submit that if you find in Chavarria what you found, given my client's lifetime of support of the Colombian government and his explicit refusal and his declaration that I will never help you because it would go against my beliefs, I don't see how this court or any reasonable fact finder could find that my client's haven't established a well-founded fear of persecution on account of – future persecution on account of an imputed political opinion. Thank you. Thank you, Your Honor. Thank you. Thank you very much. The case is well argued, taken under advisement.